UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

WABASH NATIONAL CORPORATION and  )
WABASH NATIONAL, L.P.,                         )
                                                                )
      Plaintiffs,                                   )
                                                                )
  v.                                                      )     CIVIL NO.  4:11cv62
                                                                )
FLEET EQUIPMENT, LLC,                        )
                                                                )
      Defendant.                                 )

<u>OPINION AND ORDER</u>

This matter is before the court on a motion to dismiss portions of a counterclaim filed by

the plaintiffs, Wabash National Corporation and Wabash National, L.P. ("Wabash"), on

February 27, 2012.  The defendant, Fleet Equipment, LLC ("Fleet") filed its response on March

29, 2012, to which Wabash National replied on April 9, 2012.

For the following reasons, the motion will be granted.

<u>Discussion</u>

Wabash seeks to dismiss Counts I (breach of contract), II (conversion), III (unfair

practices/unfair competition, V (breach of the duties of good faith and fair dealing), and VI

(promissory estoppel) of Fleet's counterclaim, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.

The alleged facts, as set forth in Fleet's counterclaim, are as follows.  Wabash  is in the

business of the design, manufacture, and distribution of certain trailers used in the trucking

industry.  In 2004, Fleet became an authorized dealer for the sale of Wabash trailers in Middle

Tennessee, Western Tennessee, and parts of Arkansas and Mississippi. (Counterclaim, ¶¶ 1, 5,

6.) In addition to being an authorized dealer of Wabash's trailers, Fleet also served as an

authorized dealer of Wabash parts and as an authorized service provider for Wabash equipment. (*Id*. at ¶ 1.) Fleet spent substantial sums to acquire these dealership rights. (*Id.* at ¶ 7.) In 2005 Wabash removed Middle Tennessee as one of Fleet's dealer territories. (*Id*.) Wabash took this action unilaterally, without cause, and over the objection of Fleet. (*Id*.) In fact, when Fleet dared to object to this narrowing of its dealer territory, Wabash threatened to terminate Fleet's dealership rights altogether. (*Id*.)

Nevertheless, the relationship between the two parties continued. (Counterclaim, ¶¶ 7, 8.) Fleet and Wabash subsequently entered into a dealership agreement, effective October 15, 2007 (the "2007 Agreement"), which assigned a certain dealer territory to Fleet that encompassed the states of Tennessee, Arkansas and Mississippi. (Counterclaim, ¶ 8; Compl., Ex. A.)

Then, in August 2009, Wabash notified Fleet of its intent to terminate the 2007 Agreement, without cause, and wrote a new dealership agreement (the "2009 Agreement") for Fleet – one that contained significantly modified terms that had not been negotiated between the parties. (Counterclaim, ¶ 10; Compl., Ex. B.) Wabash invited Fleet to contact it with any questions or concerns regarding this new agreement – an invitation which Fleet accepted. (Counterclaim, ¶¶ 11, 12.) After reviewing the 2009 Agreement and finding its modified terms to be unacceptable, Woody Welch, Fleet's president, contacted Steve Ginn, Wabash's director of dealer development, with the express purpose of discussing the proposed 2009 Agreement. (*Id*. at ¶ 12.) Mr. Ginn told Mr. Welch to put the 2009 Agreement aside until the parties could review it together and consider Fleet's objections. (*Id*.)

After Mr. Ginn told Mr. Welch to go ahead and set the 2009 Agreement aside for the time being, Fleet continued on as a Wabash dealer pursuant to Mr. Ginn's representations and

the terms of the 2007 Agreement, selling enough Wabash trailers in the ensuing years to rank Fleet among the most successful Wabash dealers in the country. (*Id*. at ¶¶ 13, 14.) During this time, Fleet invested significant resources in continuing to develop its business as a Wabash dealer, and as a result, forfeited the pursuit of other business opportunities. (*Id*. at ¶ 57.) At no time did Wabash tell Fleet that it must sign the 2009 Agreement in order to continue operating as a Wabash dealer, that Fleet's status as a dealer was in jeopardy, or that Wabash took exception to Fleet's concerns regarding the 2009 Agreement. (*Id*. at ¶ 18.) Rather, as a matter of course, Fleet submitted orders for more than 3,000 Wabash trailers over the next two years, regularly communicating with Wabash representatives to negotiate and price trailer sales. (*Id*. at ¶¶ 14, 18.)

On or about May 27, 2011, more than two years after Wabash told Fleet to set the 2009 Agreement aside, it sent a letter to Fleet (the "Termination Letter") terminating Fleet as an authorized dealer of Wabash trailers, effective immediately, without notice of, or an opportunity to cure, any purported problems. (Counterclaim, ¶¶ 15, 16, Ex. 1.) Wabash did this unilaterally, without warning, in alleged violation of the cancellation requirements of the 2007 Agreement and despite admissions from its own representatives that there was no cause to terminate Fleet. (*Id*.at ¶¶ 16, 27.)

In the Termination Letter, Wabash specifically stated that it was terminating Fleet pursuant to the terms of the 2007 Agreement. (*Id*. at ¶ 17, Ex. 1.) Wabash based its termination of Fleet on the fact that Fleet did not execute the 2009 Dealership Agreement, giving no credence to the representations made by its director of dealer development that Fleet could set the 2009 Agreement aside until such time as Wabash and Fleet could address Fleet's concerns.

(*Id*. at ¶¶ 12, 16, Ex. 1.)

Although the Termination Letter purported to terminate Fleet immediately, without the 30 days' notice required by the 2007 Agreement, Wabash did recognize that Fleet had trailer orders pending as of the date of the Termination Letter. (*Id*. at ¶ 21, Ex. 1.) Accordingly, Wabash promised to "complete production on trailers ordered by Fleet Equipment, prior to [the date of the Termination Letter], for sale to [Fleet customers] Re West, Ozark, Southern Cal, Transport America, JNJ and Tango." (*Id*.) Wabash also promised to "manufacture and sell to Fleet Equipment the 150 stock trailers ordered [by Fleet Equipment] earlier [in 2011]." (*Id*.) However, Wabash allegedly failed to fulfill the orders as promised to Fleet in the Termination Letter. (*Id*. at ¶ 22.)

Allegedly, instead of fulfilling the orders as promised, Wabash unilaterally modified the terms and conditions of the pending sales, diverted order fulfillment away from Fleet and diverted Fleet's business opportunities to others. (*Id*. at ¶¶ 23, 24.) Wabash allegedly accomplished this, in part, by taking proprietary customer information that Fleet provided to Wabash for other purposes, and without Fleet's permission or knowledge, using that proprietary information to undercut Fleet, to make Fleet uncompetitive with its own customers, to divert sales and customer relationships away from Fleet and to directly compete with Fleet in violation of the 2007 Agreement. (*Id*. at ¶ 19.) Fleet alleges that Wabash has engaged in this unlawful use of Fleet's proprietary information since August of 2009 and continues to do so to this day. (*Id*. at ¶¶ 19, 20.)

In support of its motion to dismiss, Wabash argues that Fleet has failed to plead the requisite elements of its causes of action. Dismissal of a complaint at the pleading stage is

appropriate where, accepting the allegations as true, the complaint fails to allege the essential elements of a claim or discloses a defect in a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "state a claim to relief that is plausible on its face," not simply one that is "speculative" or "conceivable." *Id.* at 547, 555, 570. The purpose of the motion to dismiss is to test, as a matter of law, whether the plaintiff is entitled to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009). While all allegations of material fact should be taken as true, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. Moreover, a court need not assume the truth of any legal conclusions pleaded by the plaintiff simply because they are cast in the form of a factual allegation. *See Twombly*, 550 U.S. at 555; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The 2007 and 2009 Agreements were attached to Wabash's complaint, therefore, these Agreements may be considered on a motion to dismiss pursuant to Rule 12(b)(6). *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). To the extent that the terms of the Agreements contradict the counterclaim, the Agreements trump the facts or allegations presented in the counterclaim. Id.

Wabash claims that Fleet has failed to state a claim for breach of contract. To prevail on a breach of contract claim, Fleet must plead and prove the existence of a contract, a breach of the contract, and resulting damages. *See Taurus Holding Co. of Am. v. Thompson*, No. 97-1590, 1997 WL 724513, at *30 (7th Cir. Nov. 17, 1997) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)). Although Fleet alleges that it entered into a written contract with Wabash , (*see* Counterclaim at ¶ 8), Wabash contends that Fleet fails to plead how or, even that, Wabash  breached the contract.

A party breaches a contract either by placing itself in a position where it cannot perform its contractual obligations, or by failing to perform all of its contractual obligations. *See Strodtman v. Integrity Builders, Inc*., 668 N.E. 2d 279, 282 (Ind. Ct. App. 1996). Wabash asserts that nowhere does Fleet point to a single contractual term that Wabash allegedly violated and fails to identify any term that was breached and fails to allege how the contract was breached. *See Murphy v. White Hen Pantry Co*., 691 F.2d 350, 353 (7th Cir. 1982) (complaint failed to state a cause of action for breach of contract because it was "nearly devoid of all mention of the specific provisions of that document."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit Inc.*, No. 1:98-CV-457, 2007 WL 2900561, at *13 (S.D. Ind. Sep. 28, 2007) (a breach of contract claim that fails to identify the term that has been violated fails as a matter of law).

Mere recitation of an element of a cause of action, such as the existence of a contract and its alleged breach by the defendant, is insufficient to meet the pleading requirements necessary to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation
to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (Internal citations and quotations omitted).

Wabash maintains that the language of both the 2007 and 2009 Agreements[1] directly

---

[1] Fleet is not alleging a breach of the 2009 Agreement and denies that the 2009 Agreement governed the business relationship between the parties. Fleet's counterclaim is based solely on the 2007 Agreement.

contradicts Fleet's allegations of breach.  For example:

1. The 2007 and 2009 Agreements expressly allow for termination without cause. *See* Compl. Exh. A at 3 ("[T]his agreement may be cancelled upon 30 days written notice by you or Wabash National or without prior notice by Wabash National if you are in default in making payments or any other term of this agreement."); Compl. Exh. B at ¶ 20 ("[T]his agreement may be terminated upon thirty (30) days written notice by Dealer or Wabash National. Additionally, Wabash National may immediately terminate this Agreement upon written notice to Dealer" for a variety of conditions.

2. The 2007 and 2009 Agreements do not restrict Wabash National's ability to do business with third parties. Compl. Exh. A at 1 ("This is not an exclusive dealership territory . . . Wabash National reserves the right to appoint dealer(s) and to acquire or establish factory branches."); Compl. Exh. B at ¶ 2 ("This is not an exclusive dealership with regard to products and/or AOR [Dealer Area of Responsibility] . . . Wabash National reserves the right to appoint dealer(s) and to acquire or establish factory-owned branches and/or dealers in the AOR."

3. The 2007 and 2009 Agreements do not state that any information provided by Fleet to Wabash National is to be considered "confidential" or restrict Wabash National's use of customer information obtained in its normal course of business. Although both Agreements restrict Fleet's use of Wabash National's confidential information, no such protections exist regarding Wabash National's use of Fleet's information. *See* Compl. Exh. A at 1 ("From time to time, Wabash National may furnish you [Fleet] confidential and/or trade secret information."); Compl. Exh. B at ¶ 5 ("From time to time, Wabash National may furnish confidential and/or trade secret information to Dealer.")

4. The 2007 and 2009 Agreements do not guarantee Wabash National will fulfill orders after the Agreements are terminated. Compl. Exh. A at 3 ("Wabash National, at its sole option, may cancel all orders pending as of the effective date of the cancellation."); Compl. Exh. B at ¶ 20 ("Wabash National, at its sole option, may cancel all orders pending as of the effective date of the termination.")

5. The 2007 and 2009 Agreements do not otherwise prevent Wabash National from competing with Fleet in the marketplace. Compl. Exh. A at 1 ("This is not an exclusive dealership territory . . . Wabash National reserves the right to appoint dealer(s) and to acquire or establish factory branches."); Compl. Exh. B at ¶ 2 ("This is not an exclusive dealership with regard to products and/or AOR [Dealer Area of Responsibility] . . . Wabash National reserves the right to appoint dealer(s) and to acquire or establish factory-owned branches and/or dealers in the AOR."

Fleet, in response, argues that it specifically alleges Wabash's termination of Fleet was in violation of the cancellation provision of the 2007 Agreement and sets forth a number of other ways in which Wabash breached the 2007 Agreement. (Counterclaim, ¶¶ 16, 19, 22, 25-29.) The cancellation provision of the 2007 Agreement provides that either party may cancel the agreement "upon 30 days written notice by you or Wabash National or without prior notice by Wabash National if you are in default in making payments or any other terms of this agreement." (Compl., Ex. A.) Fleet alleges that the Termination Letter cancelled the 2007 Agreement effective immediately, without any notice, let alone the 30 days' notice required by the 2007 Agreement. Under the terms of the 2007 Agreement, Wabash could only terminate the agreement without notice if Fleet was in default. However, Fleet specifically alleged that the agreement was terminated without cause, even alleging that representatives of Wabash admitted there was no cause for the termination. Fleet also attached the Termination Letter to its counterclaim as additional evidence that Wabash terminated Fleet without cause, in violation of the 2007 Agreement. The Termination Letter terminates Fleet pursuant to the terms of the 2007 Agreement, but does not state that Fleet was in default of the 2007 Agreement.

Interestingly, in reply, Wabash bases its argument on the specific allegations of the Counterclaim. Wabash claims that Fleet ignores the allegations of its Counterclaim, in which Fleet alleges that Wabash provided notice of cancellation two years earlier in 2009. *See* Counterclaim at ¶ 10 ("[I]n approximately August of 2009, Wabash National notified Fleet Equipment of its intent to terminate the 2007 Agreement"); Counterclaim at ¶ 11 ("Wabash National presented the 2009 Agreement to Fleet Equipment as if Fleet Equipment had *no option* but to agree to the terms of the 2009 Agreement") (emphasis added); Response at 2 ("[I]n

August

2009 . . . Wabash notified Fleet of its intent to terminate the 2007 Agreement."). Wabash asserts

that these allegations must be taken as true for purposes of this motion and that they establish

that Wabash provided notice of cancellation in August of 2009.

It appears that Fleet has pleaded itself out of court with respect to this issue. Fleet is

relying on a contract that it has admitted it received notice of termination. The termination letter

followed nearly two years later, on May 27, 2011. This period was more than sufficient to satisfy

the thirty-day requirement of the 2007 Agreement. Accordingly, Fleet's claim for breach of

contract based on an alleged breach of the termination provision will be dismissed.

Fleet also alleges that Wabash breached the 2007 Agreement by failing to fulfill orders.

However, as Wabash points out, the plain language of the Agreement states that "Wabash

National, at its sole option, may cancel all orders pending as of the effective date of the

cancellation." Wabash contends that this language gives it the sole and exclusive discretion on

whether to cancel orders. Fleet has not directed the court to any language in the Agreement that

provides support for its assertion that Fleet breached the Agreement as alleged. Fleet argues

that the language of the Agreement implies that if Wabash opts to fulfill pending orders at the

time of cancellation, it will be liable to Fleet for delivery of those orders. Yet, there is nothing in

the Agreement to support such an implication. The Agreement specifically gives Wabash the

sole option to cancel all orders.

Fleet also claims that Wabash breached the 2007 Agreement by obtaining Fleet's

confidential and proprietary business information, and using that information to undercut Fleet's

business relationships, and to divert sales from Fleet to its competitors in Fleet's dealer territory.

Again, Fleet has not pointed to any specific provision in the Agreement to support its argument. Wabash, in response, insists that the 2007 Agreement does not prohibit the use of confidential or proprietary information by Wabash. Although Fleet is correct that the Agreement states that "Wabash National will appoint no other general trailer dealer for Wabash brand products", it is clear that the Agreement does not prohibit Wabash from using Fleet's confidential and proprietary information. Accordingly, as Fleet has failed to state a breach of contract claim, Count I will be dismissed.

Next, Wabash argues that Fleet fails to state a claim for conversion because it does not allege a property interest over which Wabash allegedly exerted unauthorized control. Fleet alleges that Wabash undercut Fleet's prices to directly compete with Fleet and diverted sales from Fleet directly to Wabash, and that this constitutes conversion. Fleet also alleges that Wabash failed to pay Fleet any commission on the direct sales Wabash made in Fleet's territory, and that this also constitutes conversion.[2] To recover on a conversion claim, Fleet must allege and prove that Wabash exerted knowing or intentional unauthorized control over Fleet's property. *See* Ind. Code § 35-43-4-3. Indiana's Crime Victim Compensation Statute provides that a person who suffers pecuniary loss as a result of a violation of, *inter alia*, the criminal conversion statute, may bring a civil action against the person who caused the loss. *See* Ind. Code § 34-24-3-1. While a criminal conviction for conversion is not necessary to recover under the crime victim's compensation statute, the claimant must still prove all elements of the alleged criminal act. *See Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004) (and cases cited).

---

[2] In its response, Fleet attempts to assert a third conversion claim by arguing that Wabash's unauthorized use of Fleet's proprietary information constitutes criminal conversion. This claim is not in the Counterclaim and will be disregarded.

While money may be the subject of an action for conversion, the money must be capable of being identified as a special chattel and be a determinate sum with which the defendant was entrusted to apply to a certain purpose. *Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 776 (Ind. Ct. App. 2009). Accordingly, the refusal to pay a debt will generally not support a conversion action. *Id.* Criminal intent is an essential element of an action for conversion. *SMC Corp. v. Peoplesoft USA, Inc.*, 1:00-CV-01095, 2004 WL 2538641, at *6 (S.D. Ind. Oct. 12, 2004) (citing *NationsCredit Comm. Corp. v. Grauel Enterp., Inc.,* 703 N.E.2d 1072, 1078 (Ind. Ct. App. 1998)).

As noted, Fleet alleges two separate theories under its criminal conversion count. Fleet's first theory states that "Wabash National's conduct in undercutting Fleet Equipment's prices to directly compete with Fleet Equipment in Fleet Equipment's dealer territory and in diverting sales from Fleet Equipment directly to Wabash , constitute [sic] conversion in violation of Ind. Code § 35-43-4-3." Counterclaim at ¶ 31. This claim fails as a matter of law because there is no property of Fleet's over which Wabash  exerted unauthorized control, let alone knowingly or intentionally. "Undercutting prices" and "diverting sales" is simply not "property" within the scope of the statute. *See* Ind. Code § 35-41-1-23 (providing the statutory definition of "property").

Fleet's second conversion theory states that "Wabash National's failure to pay Fleet Equipment any commission on the direct sales Wabash National made in Fleet Equipment's territory also constitutes separate and independent conversion in violation of Ind. Code § 35-43-4-3." Counterclaim at ¶ 32. Wabash argues that this claim also fails as a matter of law because no money Wabash  allegedly obtained from "diverted sales" or "commissions of direct sales" is

identifiable as special chattel. No facts are alleged or exist which would indicate the money was of a determinate sum with which Wabash was entrusted to apply to a certain purpose. Wabash's alleged withholding of these funds from Fleet is simply the failure to pay a debt, which does not constitute conversion. *See Huff v. Biomet, Inc.,* 654 N.E.2d 830, 836 (Ind. Ct. App. 1995) *abrogated on other grounds* (holding that wrongful withholding of money from commissions did not constitute criminal conversion where there was no evidence that the money was entrusted to the defendant for a particular purpose or that the defendant retained specific funds that could be directly attributed to plaintiff).

Wabash further maintains that Fleet's conversion claim fails because Fleet did not plead under either theory that Wabash had the requisite criminal intent. It is undisputed that nowhere in Fleet's counterclaim does it even attempt to plead that Wabash had criminal intent when it allegedly undercut Fleet's prices or diverted Fleet's sales. The failure to plead this criminal intent is, in itself, sufficient grounds to dismiss this claim. *See NationsCredit Comm. Corp.,* 703 N.E.2d at 1078 ("It is this *mens rea* requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to reach."). Accordingly, Count II will be dismissed.

Next, Wabash argues that this court should dismiss Count III (Unfair Practices/ Unfair Competition) because Fleet does not have standing under the Indiana, Arkansas, and Mississippi statutes on which it relies. Fleet alleges that Wabash's conduct "constitutes unfair practices and/or unfair competition with Fleet" in violation of three state statutes. *See* Counterclaim at ¶¶ 40, 42. Fleet does not mention that the Agreement for which it is advocating – the 2007 Agreement – is governed exclusively by Indiana law. *See* Compl. Exh. A at 3. ("The law of the

State of Indiana shall govern this agreement, except as otherwise provided by law.") In any

event, Wabash argues that Fleet does not have standing to assert a claim under any of the statutes

because Fleet is neither a "dealer" under Indiana law nor a "motor vehicle dealer" under

Arkansas and Mississippi law.

Fleet begins by alleging that Wabash violated Indiana Code § 9-23-3-23, which

states in relevant part:

> It is an unfair practice for a manufacturer, distributor, officer, or agent to do any
> of the following: (3) establish or acquire wholly or partially a franchisor owned
> outlet engaged wholly or partially in a substantially identical business to that of
> the franchisee within the exclusive territory granted the franchisee by the
> franchise agreement or, if no exclusive territory is designated, competing unfairly
> with the franchisee within a reasonable market area.

Wabash argues that Fleet does not have standing to assert a cause of action under Indiana Code §

9-23- 3-23 because, on its face, the statute is written to protect the interests of "franchisees"

against the unfair practices of "franchisors." *See* Ind. Code § 9-23-3-23. To satisfy the definition

of a "franchisee" entitled to protections under this statute, one must be "a *dealer* to whom a

franchise is granted." Ind. Code § 9-13-2-68 (emphasis added). To be a dealer, one must be "a

person who sells to the general public . . . at least twelve (12) vehicles each year *for delivery in*

*Indiana*. . . A dealer must have an *established place of business* that meets the minimum

standards." Ind. Code § 9- 13-2-42 (emphasis added).

As Wabash points out, Fleet does not satisfy this definition. Rather, Fleet's allegations and the

terms of the 2007 Agreement it relies upon prove that Fleet falls outside the scope of the statute.

*See* Counterclaim at ¶ 6 ("When Fleet Equipment became a Wabash National dealer in 2004, its

territories included Middle Tennessee, Western Tennessee, parts of Arkansas, and parts of

Mississippi, among others."); Compl. Exh. A at 1 ("We require you to obtain written permission

from Wabash National prior to you quoting or selling Wabash brand products outside the territory listed in 'Exhibit A.'").

Additionally, Fleet does not have, or even allege it has, an established place of business in Indiana as required by Indiana law. *See* Ind. Code § 9-13-2-50 (An "'[e]stablished place of business' means a permanent enclosed building or structure owned or leased for the purpose of bartering, trading, and selling motor vehicles. The term does not include a residence, tent, temporary stand, or permanent quarters temporarily occupied.") In fact, Fleet alleges that "[a]t all times relevant hereto, Fleet Equipment was a Tennessee limited liability company, with its principal place of business located in Memphis, Shelby County, Tennessee." Counterclaim at ¶ 2.

Fleet's failure to plead that it sells vehicles for delivery in Indiana or has an established place of business in Indiana is especially significant because, under Indiana law, franchise statutes should not be given extraterritorial effect. *See Wright-Moore Corp. v. Ricoh Corp.,* 794 F. Supp. 844, 860 (N.D. Ind. 1991) (interpreting the Indiana Deceptive Franchise Practice Act). This court agrees with Wabash that because Fleet is not a "dealer" it cannot be a "franchisee" and therefore cannot assert a cause of action under Indiana Code § 9-23-3-23. Accordingly, Fleet does not meet the statutory requirements to assert a claim of unfair practices under Indiana law and Count III will be dismissed.

In any event, even if Fleet had standing to state a claim under Indiana Code § 9-23-3-23, it is apparent from the face of the complaint that it does not meet the substantive elements of the statute. To satisfy the requirements of the statute, Fleet must plead and prove two elements: (1)

that Wabash "establish[ed] or acquire[d] wholly or partially a franchisor owned outlet;" and (2)
that the outlet was either "engaged wholly or partially in a substantially identical business to that
of the franchisee within the exclusive territory granted the franchisee by the franchise
agreement," or, "if no exclusive territory is designated," that the outlet was "competing unfairly
with the franchisee within a reasonable market area." *See* Ind. Code § 9-23-3-23.

Wabash argues that Fleet's claim fails as a matter of law because, as set forth in the
complaint, Wabash did not establish or acquire – either wholly or partially – a franchisor-owned
outlet. Therefore, Fleet has failed to meet the first element of the statute. Instead, Fleet skips
directly to the second element, emphasizing the adjective clause "competing unfairly with the
franchisee within a reasonable market area." *See* Counterclaim at ¶ 39. It appears that Fleet has
conflated the two elements and is alleging that Wabash is "competing unfairly with the
franchisee within a reasonable market area" and is therefore in violation of the statute. This is an
incorrect reading of the statute because "competing" is a present participle adjective describing
"outlet," not "manufacturer" as Fleet's interpretation presumes.

Fleet, however, contends that because it "alleged that Wabash unlawfully used Fleet's
proprietary information to undercut Fleet, to divert potential sales and customer relationships
away from Fleet and to directly compete with Fleet in Fleet's dealer territory" that it need not
allege the first element of Ind. Code § 9-23-3-23, that Wabash "establish[ed] or
acquire[d] wholly or partially a franchisor owned outlet" in Fleet's dealer territory. Fleet reasons
that, even though it has tacitly conceded that Wabash did not establish or acquire such an outlet,
its claim should survive because "Fleet is not required to plead specific facts corresponding to
each and every element of the statute." However, in this case, Fleet's claim is not even plausible

because Wabash did not establish or acquire such an outlet as required under the statute. *See Doe*, 429 F.3d at 708 (a complaint suffices only when "facts consistent with its allegations, and showing entitlement to prevail, *could* be established by affidavit or testimony at a trial.") (Emphasis added). Because there can be no facts established that will entitle Fleet to relief under Ind. Code § 9-23-3-23, its unfair practices claim will be dismissed.

Wabash also contends that Fleet's allegation that "Fleet Equipment is entitled to recover punitive damages against Wabash National for its unfair practices and/or unfair competition" (*see* Counterclaim at ¶ 43) is a misstatement of the law. Indiana Code § 9-23-6-9 states: "A dealer who is injured by an unfair practice set forth in IC 9-23-3 . . . may recover damages or may receive injunctive relief, or both, and may recover the cost of the suit, including reasonable attorney's fees." Wabash maintains that because punitive damages are not included among the statutory remedies, they are not allowed. *See Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 763 (Ind. 2001) (holding that punitive damages are not recoverable under the wrongful death statute which provides a list of recoverable damages that does not include punitive damages).

Fleet contends that punitive damages are available under Indiana Code § 9- 23-3-3 because the statute does not "prevent any category of damages from being recovered." Response at 18. As Wabash points out, Fleet has misstated the law. In Indiana, punitive damages are recoverable under a statutory cause of action only by explicit statutory authorization. *See Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 137 (Ind. 2005) (holding that because Indiana's Survival Statute "does not address the issue of punitive damages one way or

the other" and "contains no explicit mention of punitive damages" that "[t]his itself can be viewed as an implicit rejection of punitive damages, which ordinarily are recoverable under a statutory cause of action only by explicit statutory authorization."); *Indiana Civil Rights Comm'n v. Alder*, 714 N.E.2d 632, 638 (Ind. 1999) ("[P]unitive damages require explicit statutory authorization if they are to be recovered under a statutory cause of action."). Indiana Code § 9-23-3-3 does not explicitly authorize punitive damages, and thus Fleet may not recover them.

Next, Wabash argues that Fleet does not meet the statutory requirements to assert a claim under Arkansas law. Fleet vaguely asserts that "[a]side from violating Indiana law, Wabash National's unfair practices also violate Arkansas (A.C.A. § 23-112-403(a)) . . . statutory law." Counterclaim at ¶ 42. Wabash has informed the court that Arkansas Code § 23-112-403(a) – when copied into a Word document with a twelve-point Times New Roman font and single-line spacing – is 5,362 words long and takes up nearly *ten pages* of text.

Wabash claims that like with its breach of contract count, Fleet invites this Court to join another fishing expedition and to speculate as to which of the dozens of subsections of Arkansas Code § 23-112-403(a) that Wabash allegedly violated. Wabash argues that the failure to specify which subsection Wabash allegedly violated is, in itself, sufficient grounds to dismiss the claim. *Cf. Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (Internal citations and quotations omitted).

However, Wabash asserts that it is not necessary to speculate as to which of the dozens of subsections within Arkansas Code § 23-112-403(a) Fleet grounds its claim because that

statute only applies to *motor vehicle dealers*. *See, e.g.* Ark. Code § 23-112- 403(a)(4)(A) ("It shall be unlawful: (4)(A) For a manufacturer to unfairly compete with a *motor vehicle dealer* of the same line make, operating under a franchise, in the relevant market area.") (emphasis added). Wabash contends that Fleet is not entitled to relief under the Arkansas statute because it is not a motor vehicle dealer within the scope of the statute for numerous reasons.

First, Arkansas Code § 23-112-103(19) defines a "motor vehicle dealer" as "a person that is: (a) Engaged in the business of selling . . . motor vehicles under a manufacturer's warranty; *and* (b) *Located at an established and permanent place of business* under a franchise, sales and service agreement, or a bona fide contract in effect with a manufacturer or distributor." Wabash points out that Fleet has failed to plead that it has an established and permanent place of business in Arkansas because it cannot. In fact, Fleet alleges that "[a]t all times relevant hereto, Fleet Equipment was a Tennessee limited liability company, with its principal place of business located in Memphis, Shelby County, Tennessee." Counterclaim at ¶ 2.

Furthermore, Arkansas Code § 23-112-103(18) defines a "motor vehicle" as: "a *selfpropelled* vehicle having two (2) or more wheels that has as its *primary purpose the transportation of a person*, including without limitation all-terrain vehicles, automobiles, trucks, motorcycles, motor-driven cycles, motor scooters, and motor homes." (emphasis added). By its own allegations, Fleet removes its claim from the scope of this statute because the Agreement with Wabash  concerned trailers, not motor vehicles. *See, e.g.* Counterclaim at ¶ 1 ("Wabash National manufactures and distributes certain trailers which are used in the trucking, transportation and distribution industries for over-the-road hauling. Beginning in 2004, Fleet Equipment has been an authorized dealer of Wabash National for the sale of Wabash National's

trailers."); Counterclaim at ¶ 8 ("Wabash National and Fleet Equipment entered into the Dealership Agreement for Wabash brand trailers."). Clearly, Fleet does not plead that it is a motor vehicle dealer under the Arkansas statute because it cannot. Accordingly, Fleet has failed to state a claim under Arkansas law and Count III will be dismissed for this reason also.

Next, Wabash asserts that Fleet does not meet the statutory requirements to assert a claim under Mississippi law. Fleet has made a vague assertion that Wabash's alleged unfair practices violate "Mississippi (Miss. Code Ann. § 63-17-73) statutory law." Counterclaim at ¶ 42. Fleet does not point to the specific section of Mississippi Code § 63-17-73 on which its claim relies. Instead, this Court and Wabash are again left to speculate, this time over the four full pages and 2,633 words of single-space, block-type text that comprise Mississippi Code § 63-17-73. Again, Wabash contends that the failure to specify which subsection Wabash allegedly violated is, in itself, sufficient grounds to dismiss the claim. *Cf. Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (Internal citations and quotations omitted).

Wabash claims that, regardless, Fleet does not have standing to assert a claim under Mississippi law because it is not a "motor vehicle dealer" within the scope of the statute. Mississippi Code § 63-17-55(b) defines a "motor vehicle dealer" as

> [A]ny person, firm, partnership, copartnership, association, corporation, trust or legal entity, not excluded by subsection (c) of this section, who holds a bona fide contract or franchise in effect with a manufacturer, distributor or wholesaler of new motor vehicles, *and a license under the provisions of the Mississippi Motor Vehicle Commission Law*, *and such duly franchised and licensed motor vehicle dealers shall be the sole and only persons, firms, partnerships, copartnerships,*

> *associations, corporations, trusts or legal entities entitled to sell and publicly or otherwise solicit and advertise for sale new motor vehicles as such.*

(emphasis added).

Fleet does not meet the definition of a "motor vehicle dealer" under the Mississippi statute because it did not – and cannot – allege that it holds a license under the provisions of the Mississippi Motor Vehicle Commission Law. Likewise, Fleet has failed to plead that it was the "sole and only persons, firms, partnerships, copartnerships, associations, corporations, trusts or legal entities entitled to sell and publicly or otherwise solicit and advertise for sale" Wabash's trailers. Indeed it cannot, as the express terms of the 2007 Agreement would directly contradict any such assertion. *See* Compl. Exh. A at 1 ("This is not an exclusive dealership territory . . . Wabash National reserves the right to appoint dealer(s) and to acquire or establish factory branches.").  As Fleet has failed to state a claim under Mississippi law, Count III will be dismissed for this reason also.

Next, Wabash argues that Count V (breach of the duties of good faith and fair dealing) should be dismissed because this is not the type of contract to which such a duty attaches.  Count V is grounded on Fleet's bald assertion that "[t]he 2007 Agreement, as well as each underlying order placed by Fleet Equipment with Wabash National, carry(ies) with it/them an implied covenant of good faith and fair dealing." Counterclaim at ¶ 53. Wabash strongly contends that this is an incorrect statement of Indiana law.

Indiana courts have recognized an implied covenant of good faith and fair dealing in contract law, but generally only in limited circumstances involving employment contracts and insurance contracts. *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) (citing *Lake County Trust Co. v. Wine,* 704 N.E.2d 1035, 1039 (Ind. Ct. App. 1998)). Indiana

law does not recognize any implied duty of good faith or fair dealing in ordinary contracts like the ones at issue here. *See, e.g., First Federal Sav. Bank of Ind. v. Key Markets, Inc.,* 559 N.E.2d 600, 604 (Ind. 1990) ("It is not the province of courts to require a party acting pursuant to such a contract to be 'reasonable,' 'fair,' or show 'good faith' cooperation. Such an assessment would go beyond the bounds of judicial duty and responsibility.").

According to Wabash, it is apparent from the face of the complaint that the 2007 Agreement was not an insurance contract or an employment contract, therefore, as a matter of law there is no implied covenant of good faith and fair dealing in the Agreement. Rather, Fleet has by its own allegations established that the 2007 Agreement is the type of ordinary contract in which a duty of good faith and fair dealing is not recognized. *See, e.g.* Counterclaim at ¶ 1 ("Beginning in 2004, Fleet Equipment has been an authorized dealer of Wabash National for the sale of Wabash National's trailers."); Counterclaim at ¶ 8 ("Wabash National and Fleet Equipment entered into the Dealership Agreement for Wabash brand trailers.").

Moreover, the terms of the 2007 Agreement expressly prevent it from being construed as an employment contract or a contract otherwise creating any fiduciary duties or an agency relationship between the parties. *See* Compl. Exh. A at 1 ("Legal relationship: You are not an employee of Wabash National and are not a Wabash National agent. You may not hold yourself out as an employee or an agent or bind Wabash National. You are a dealer of Wabash National products. Wabash National may provide various training and assistance to you from time to time. However, you control your business, including its pricing and marketing.").

Fleet argues that the relationship between the parties is predominantly one for the sale of goods, and therefore gives rise to an implied duty of good faith and fair dealing under the UCC.

Fleet points out that every contract that is subject to the UCC "imposes an obligation of good faith in its performance or enforcement."  Ind. Code 26-1-1-201(19).

However, as Wabash notes, Fleet's reliance on the UCC to support its claim for breach of the duties of good faith and fair dealing is misplaced, because the UCC does not recognize an independent cause of action for breach of the duties of good faith and fair dealing. *See* Comment to Ind. Code § 26-1-1-203 ("This section does not support an independent cause of action for failure to perform or enforce in good faith . . . the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached."). *See also Crawford v. Countrywide Home Loans, Inc.*, 3:09-CV-247, 2011 WL 3875642, at *10 (N.D. Ind. Aug. 31, 2011) (breach of the duties of good faith and fair dealing claim failed because "Indiana has not recognized a cause of action for breach of the duty of good faith independent of a claim for breach of contract."). As Fleet has asserted a claim that does not exist, Count V will be dismissed.

Lastly, Wabash argues that Count VI (promissory estoppel) should be dismissed because Wabash has not made the necessary promise to Fleet.  To prevail on a promissory estoppel claim, the plaintiff must plead and prove (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Hinkel v. Sataria Distribution & Packaging, Inc.*, 920 N.E.2d 766, 771 (Ind. Ct. App. 2010). Wabash asserts that Fleet's promissory estoppel claim fails for the following reasons.

First, Fleet has failed to plead the essential element that Wabash made a promise to Fleet. A promise is a "voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the *promisor* will perform some action or refrain from some action in the future." *Kacak v. Bank Calumet, N.A.*, 869 N.E.2d 1239, 1242 (Ind. Ct. App. 2007) (emphasis added). Fleet did not plead that anyone from Wabash made any commitments or assurances that Wabash would or would not do something. Rather, the alleged statement of Wabash's Director of Dealer Development (Mr. Ginn) to Fleet's President (Mr. Welch) was an instruction dictating *Fleet's* conduct. *See* Counterclaim at ¶ 12. ("Mr. Ginn told Mr. Welch to put the 2009 Agreement aside while Wabash and Fleet Equipment reviewed the 2009 Agreement together."). On its face, this statement does not constitute a promise.

Second, even if Wabash's statement could be considered a promise, Fleet's promissory estoppel claim is founded on a written contract and is therefore barred as a matter of law. In Indiana, the existence of a written contract precludes claims based on an implied or equitable theory of recovery, like promissory estoppel, covering the same subject matter. *See Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 932 (Ind. Ct. App. 2003) (employee could not maintain claim of promissory estoppel against employer for failing to provide promised stock ownership package; promise was founded on a written contract). The allegations contained in Count VI are grounded in the interpretation of the 2007 Agreement. *See, e.g.* Counterclaim at ¶ 59 ("Wabash National should be estopped from claiming that Fleet Equipment's objections to the 2009 Agreement constituted a basis for terminating the 2007 Agreement."). This claim cannot be resolved without interpreting the termination and renewal provisions of the 2007 Agreement. *See* Compl. Exh. A at 3 ("[T]his agreement may be cancelled upon 30 days written

notice by you or Wabash National or without prior notice by Wabash National if you are in default in making payments or any other term of this agreement.").

In response, Fleet changes its story and offers new allegations that were not pleaded in the Counterclaim. *See* Response at 24. ("Fleet's promissory estoppel claim is based on Fleet's reasonable reliance on Wabash's representations that the *parties* would put the 2009 Agreement aside . . .") (emphasis added). However, nowhere in the Counterclaim does Fleet allege that Wabash promised to "put the 2009 Agreement aside." Clearly , Fleet's promissory estoppel claim fails as a matter of law and Count VI will be dismissed.

Conclusion

On the basis of the foregoing, Wabash's motion to dismiss Counts I, II, III, V and VI of the counterclaim [DE 17] is hereby GRANTED.

Entered: June 13, 2012.

s/ William C.  Lee
William C. Lee, Judge
United States District Court